UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

WILFRED J. HINES,                                    Civil No. 05-1408 (ADM/AJB)

          Plaintiff,

       v.                                          **REPORT AND RECOMMENDATION**

JOAN FABIAN,
Commissioner of Corrections,
CONNIE ROLRICH,
Warden of MCF-Faribault,
DANIEL FERRISE,
Warden of MCF-Stillwater,
RALPH SCHMIDT,
Special Investigator,
JESSICA SYMMES,
Associate Warden,
REGINA STEPNEY,
Case Manager Supervisor,
JOHN DOE, unknown, and
JOHN DOE, unknown,

          Defendants.

_____

Plaintiff, a prisoner at the Minnesota Correctional Facility at Stillwater, Minnesota, ("MCF-STW"), commenced this action by filing a self-styled pleading entitled "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983." (Docket No. 1.) The matter has been assigned to this Court for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons discussed below, the Court finds that Plaintiff's complaint fails to state a claim on which relief can be granted, and that this action should therefore be summarily dismissed pursuant to § 1915A(b)(1).

## I. BACKGROUND

Plaintiff alleges that in February 2004, he was confined at the Minnesota Correctional Facility in Faribault, Minnesota, ("MCF-FRB"). On February 26, 2004, Plaintiff was visited by an "agent" who came to MCF-FRB to execute a warrant issued by a federal magistrate judge. The warrant required Plaintiff to provide a saliva sample, which was to be used for DNA testing in connection with a federal criminal investigation. Shortly thereafter, the Minnesota Department of Corrections, ("DOC"), changed Plaintiff's custody classification from "minimum custody" to "close custody." According to Plaintiff, his custody classification was changed because of the federal criminal investigation for which he had provided the DNA sample.

On March 2, 2004, Plaintiff allegedly was transferred from MCF-FRB to MCF-STW, which is, according to Plaintiff, a more secure and more onerous prison facility. Beginning on May 1, 2004, Plaintiff sought to change his custody classification from "close" back to "minimum," with the hope that he might then be transferred back to MCF-FRB. Plaintiff alleges that the Associate Warden at MCF-STW, Defendant Jessica Symmes, told him that he would remain at MCF-STW, and presumably retain his close custody status, "until the pending federal charges are resolved." (Complaint, p. 3, ¶ 21.) Since then, Plaintiff has been trying persistently to either (a) get the "pending federal charges" resolved, or (b) get the DOC to change his custody status, and transfer him back to MCF-FRB, despite the "pending federal charges." To date, however, those efforts have been unsuccessful, and Plaintiff remains confined at MCF-STW.

Plaintiff alleges that as a result of his ongoing close custody status, and his continuing incarceration at MCF-STW, he has been deprived of the opportunity to participate in a prison

2

"boot camp" program, as well as other training programs, and work release programs.  He also alleges that MCF-STW "is a very hostile, intimidating and stressful environment, because most of the inmates in this setting tend to have more longer [sic] sentence[s] and are convicted of serious crimes, and as a consequence care less how they act or treat other[s]."  (Complaint, p. 4, ¶ 30.)

In the present lawsuit, which is brought under 42 U.S.C. § 1983, Plaintiff claims that his ongoing close custody and confinement status violates his constitutional right to due process under the Fourteenth Amendment, and subjects him to "cruel and unusual punishment" in violation of the Eighth Amendment.  Plaintiff is attempting to sue the Commissioner of the DOC, the wardens at MCF-STW and MCF-FRB, and several other DOC employees.  He is seeking a judgment that would reinstate his minimum custody classification, and award him compensatory damages for the alleged violations of his federal constitutional rights.

## II.  DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A.  That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a).  The Court must determine which aspects of the pleading are actionable and should be allowed to proceed.  If the pleading fails to state a legally cognizable claim, the action must be dismissed.  28 U.S.C. § 1915A(b)(1).

The Court finds that the present action must be summarily dismissed pursuant to §

3

1915A(b)(1), because Plaintiff's complaint fails to state any claim on which relief can be granted. The facts alleged in his complaint will not support either a Fourteenth (or Fifth) Amendment due process claim, or an Eighth Amendment "cruel and unusual punishment" claim.

A. Due Process Claim

To state an actionable due process claim, Plaintiff would have to allege facts showing that he was deprived of some constitutionally protected liberty interest, without being afforded the procedural protections of due process. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). A constitutionally protected interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995).

In Sandin, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. Our Court of Appeals has interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996) (emphasis added.)

Plaintiff's current complaint does not state an actionable due process claim because there are no factual allegations suggesting that he has been subjected to the type of significant

4

hardship that Sandin requires.  The only "hardships" alleged in the complaint are those directly related to Plaintiff's current custody classification – i.e., the harsher conditions of a more secure prison facility, and the lost opportunities to participate in various rehabilitation programs.  While those circumstances have undoubtedly made Plaintiff's confinement more difficult and unpleasant, they clearly are not the type of "atypical and significant hardship" contemplated by Sandin.

Federal courts have repeatedly recognized that unwanted prison transfers, harsh prison conditions, lost privileges, and lost opportunities for work, education and rehabilitation are normal and expectable experiences of prison life, and are not the type of "atypical and significant hardship" that implicate constitutionally protected liberty interests.  Freitas v. Ault, 109 F.3d 1335, 1337 (8th Cir. 1997) (prisoner had no constitutionally protected liberty interest in remaining in a less restrictive prison environment, and he therefore was not entitled to due process before being transferred to a more restrictive institution); Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 668-69 (8th Cir. 1996) (prisoner was not entitled to due process before being transferred from a work release facility to far more restrictive housing in a state reformatory); Moorman, 83 F.3d at 971 (due process not required before effecting prisoner's transfer from minimum security facility to maximum security facility); Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) ("administrative and disciplinary segregation are not atypical and significant hardships under Sandin").  See also Olim v. Wakinekona, 461 U.S. 238, 250 (1983), (prison authorities "may transfer a prisoner 'for whatever reason or for no reason at all'"), quoting Meachum v. Fano, 427 U.S. 215, 228 (1976); Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994) (per curiam) ("[t]he Due Process

5

Clause does not itself create a liberty interest in a particular prison classification"); Moody v. Daggett, 429 U.S. 78, 88, n. 9 (1976) (prisoner's interest in participating in "rehabilitative programs" is not "sufficient to invoke due process").

In sum, while Plaintiff's custody re-classification and prison transfer may have made the conditions of his prison sentence more severe, he has not described any circumstances that would satisfy Sandin's "atypical and significant hardship" standard. Therefore, Plaintiff has failed to plead an actionable due process claim.

B.  Eighth Amendment Claim

To state an actionable civil rights claim based on the Eighth Amendment, a prisoner must allege facts showing that prison officials were personally aware of some particular "excessive risk" to his health or safety, and knowingly and deliberately disregarded that risk. Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995). The prisoner's complaint must allege facts showing that the named defendant(s) harmed him by deliberately disregarding his "serious medical needs," (Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)), forcing him to live in conditions that do not meet the minimum standards of a civilized society, (Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), using excessive physical force, (Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)), or deliberately exposing him to an obvious risk of physical harm, (Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

In this case, Plaintiff's complaint alleges no facts showing that any Defendant has been deliberately indifferent to his health, safety and well-being. There are no allegations suggesting that he has suffered, or is likely to suffer, any deliberate cruelty, mistreatment or abuse, that is likely to cause him physical injury. Simply put, Plaintiff's complaint fails to allege

any events or circumstances that could be viewed as a violation of his Eighth Amendment rights.

## III. CONCLUSION

Having carefully reviewed Plaintiff's complaint, the Court concludes that he has failed to state an actionable claim for relief under 42 U.S.C. § 1983, because he has not alleged any facts showing that Defendants violated his federal constitutional rights.  The Court will therefore recommend that this action be summarily dismissed pursuant to 28 U.S.C. § 1915A(b).

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

This action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

Dated: July 22, 2005

 s/ Arthur J. Boylan
ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before August 5, 2005.